**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Trauscht, | No. CV-24-01430-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Villa Lafayette Associates Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendant Villa Lafayette Associates Incorporated's ("VLA") Motion to Quash Plaintiff Ryan Trauscht's Subpoena Duces Tecum (Doc. 96). The Motion has been fully briefly. The Court **grants** the Motion.

**I.    BACKGROUND**

VLA is a condominium association located in Phoenix, Arizona. (Doc. 17 at 2.) Plaintiff is a resident and member of VLA and served on its board of directors (the "Board"). (*Id.*) The Board typically met in person, but held its April 2024 meeting over Zoom. (*Id.* at 4.) Plaintiff objected, claiming that his hearing impairment precluded him from participating in Zoom meetings. (*Id.*) VLA's community manager, and Travis Law Firm, PLC ("Travis Law"), VLA's counsel, informed Plaintiff that Zoom meetings were sufficient to accommodate his impairment because Zoom has a closed captioning feature. (*Id.* at 4–6.) On April 15, 2024, the Board voted to remove Plaintiff and to continue holding Board meetings over Zoom. (*Id.* at 4–5.) Plaintiff still requested in-person meetings, but the Board continued to hold Zoom meetings. (*Id.* at 7.) Plaintiff then sued VLA for

discrimination and retaliation under both the Federal and Arizona Fair Housing Acts. (*Id.* at 9–12.) Plaintiff filed his complaint on June 13, 2024. (*Id.* at 10.)

Travis Law was VLA's general counsel from 2021 to 2025. (Doc. 96 at 2.) In 2025, Jay Swart and Jim Trapani, other members of the Board, retained Travis Law to represent them in the present action. (*Id.*) Swart and Trapani have since obtained substitute counsel. (*Id.*) During litigation, Plaintiff served VLA with a subpoena (the "Subpoena") requesting: (1) "All Communications between Travis Law firm and Oasis Community Management between June 1, 2023 and July 31, 2025";[1] and (2) "All communication between Travis Law Firm and any member of [VLA's Board], including Jay Swart . . . and Jim Trapani . . . between June 1, 2023 and July 31, 2025".[2] (*Id.*) VLA filed the present Motion, seeking to quash the Subpoena. (*Id.*) VLA argues that the Subpoena "seeks information that is protected by attorney-client privilege." (*Id.*) Still, VLA produced some responsive documents and a privilege log (the "Privilege Log"). (Doc. 101 at 7; Doc. 101-1 at 2–4.) The Court ordered VLA to amend the Privilege Log to comply with Federal Rule of Civil Procedure ("Rule") 26 (b)(5)(A)(ii). (Doc 103.) VLA has since filed an amended Privilege Log. (Doc. 104.)

## II.   LEGAL STANDARD

A party is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Regarding Subpoenas, Rule 45(d)(3)(A)(iii) provides: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter, if no

---

[1] VLA notes that "Oasis manages other associations that are clients of [Travis Law]." (Doc. 96 at 3.) Accordingly, VLA argues that Plaintiff's "request is not limited to communication with a particular [Oasis] client such as [VLA]." (*Id.*) Plaintiff responds that he "obviously does not oppose a modification to [the request] to exclude Oasis communications unrelated to [VLA]." (Doc. 101 at 1 n.1.) Plaintiff "stipulates to modifying the first category of documents to seek only communications [Travis Law] and Oasis shared in their role as agents of the [VLA]." (*Id.* at 7 n.2.)
[2] Plaintiff also requested "[a] copy of any and all agreements between Travis Law Firm and [VLA]" and "[a] copy of all itemized invoices Travis Law Firm sent to [VLA] between June 1, 2020 and July 31, 2025." (Doc. 96 at 2.) The Court does not address these requests because Plaintiff concedes that he "does not seek additional records responsive to" these requests. (Doc. 101 at 7.)

exception or waiver applies." A party may move to quash a subpoena that requests matter protected by attorney-client privilege. *See McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).

Attorney-client privilege "protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). This privilege is "strictly construed," *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010), and "[t]he party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication," *Richey*, 632 F.3d at 566. "The attorney-client privilege exists where: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* (citation modified).

If a party wishes to shield discoverable information by a claim of privilege, it must abide by Rule 26(b)(5)(A)(ii), which provides:
> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

"[A] privilege log is one way (albeit not the only way) to justify the withholding of responsive documents pursuant to the attorney-client privilege." *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 517 (D. Ariz. 2023). "The Ninth Circuit has held that an attorney-client privilege log is sufficient where it identifies, for each withheld document, 'the attorney and client involved,' 'the nature of the document,' 'all persons or entities shown on the document to have received or sent the document,' 'the date the document was generated, prepared, or dated,' and 'information on the subject matter of each document." *Id.* (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir.

1992)). The Court now assesses VLA's claims of privilege.

## III.   DISCUSSION

Many of the documents in the Privilege Log are clearly protected by attorney-client privilege. Indeed, Plaintiff acknowledges that he "does not seek the production of any communication that Swart or any other agent of [VLA] may have had with counsel once [VLA] had denied the accommodation on June 4, 2024." (Doc. 101 at 15.) Instead, Plaintiff appears to argue that only certain documents in the Privilege Log are not privileged, or that the privilege has otherwise been waived. The Court acknowledges that some of Plaintiff's arguments reflect the Privilege Log's prior inadequacy.

Ultimately, Plaintiff proffers three arguments. First, Plaintiff argues that VLA failed to establish why certain communications pertaining to its insurance coverage are subject to attorney-client privilege. (*Id.* at 9.) Second, Plaintiff argues VLA failed to establish that certain documents pertaining to "COA Meetings"[3] are privileged, noting that he "was on the Board and, therefore, within the privilege." (*Id.* at 8.) Specifically, Plaintiff argues he is entitled to communications regarding the decision to move the Board meetings to Zoom. (*Id.* at 12.) And third, to the extent these communications are privileged, Plaintiff argues Swart impliedly waived the privilege because, in a request for admission, he indicated that he intended to assert an advice of counsel defense.[4] (*Id.* at 13.) The Court addresses each argument in turn.

### A. Communications Pertaining to Insurance Coverage

Plaintiff argues that VLA failed to establish that certain communications pertaining to insurance coverage are privileged. (Doc. 101 at 9.) Plaintiff notes that VLA failed to establish that these communications "contained legal advice" as opposed to general business advice. (*Id.*) Plaintiff also argues he is entitled to such communications because, as a Board member, he is "equally entitled to know the impact the lawsuit was having on [VLA]." (*Id.* at 10.)

---

[3] It is not clear to the Court what "COA" stands for, but it appears that "COA" is meant to refer to the Board.
[4] Swart is a separately named defendant in this matter. (Doc. 17 at 1.) Swart responded to Plaintiff's request for admission in his individual capacity. (Doc. 101-18 at 2.)

The Privilege Log identifies five documents pertaining to insurance coverage. The first is an August 15, 2024 communication from a Travis Law attorney to a Board member described as a "[c]ommunication to client providing legal advice concerning lawsuit by Trauscht and status of insurance decision." (Doc. 104-1 at 2.) The next four are communications from a Travis Law attorney to a Board member—occurring on August 19, 21, 26, and September 9, 2024—where each is described as a "[c]ommunication to client with status of insurance coverage for lawsuit." (*Id.* at 3.)

Although the Privilege Log is still sparse, it is sufficient to comply with Rule 26(b)(5)(A)(ii). *See Mi Familia Vota*, 344 F.R.D. at 518 ("[D]ocument descriptions in a privilege log need not be sufficient to make a confident ruling on whether the privilege claims are valid." (citation modified)). The communications are all between an attorney and their client, occurred after Plaintiff filed the present lawsuit, and were related to the lawsuit.

Plaintiff correctly argues that communications with attorneys for "non-legal" advice are not privileged. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (recognizing that there are "several contexts in which communications with attorneys for the purpose of non-legal advice are not privileged"). However, there is a rebuttable presumption that a lawyer is hired to give legal advice. *Id.* Although Travis Law was VLA's counsel prior to the present lawsuit, there is no indication that its communications with VLA regarding insurance constituted general business advice. Accordingly, the Court grants VLA's motion insofar as Plaintiff seeks communications related to insurance coverage for the lawsuit.

**B. Communications Regarding Board Meetings**

Plaintiff argues that VLA failed to establish that certain communications pertaining to Board meetings are privileged. (Doc. 101 at 8.) Again, Plaintiff argues that VLA failed to delineate between general business communications and communications constituting "legal advice." (*Id.* at 8–9.) The Privilege Log identifies four documents[5] pertaining to

---

[5] The Privilege Log also identifies an April 24, 2024 communication from a Board member to Travis Law "seeking legal advice on claims of Trauscht against COA." (Doc. 104-1

- 5 -

Board meetings. First, an April 9, 2024 communication from a Travis Law attorney to a Board member described as a "[c]ommunication reflecting legal advice about COA Meeting." (Doc. 104-1 at 1.) Second, an October 30, 2024 communication from a Travis Law attorney to a Board member described as a "[c]ommunication to a client providing legal advice on calling COA Meeting." (*Id.* at 4.) And the third and fourth are communications on November 20, 2024 from Board members to Travis Law, each described as a "[c]ommunication from client seeking legal advice on COA Meeting." (*Id.*)

Again, although the Privilege Log is sparse, it is sufficient to comply with Rule 26(b)(5)(A)(ii). The communications were between an attorney and their client and constitute legal advice. Again, there is a presumption that lawyers are hired to give legal advice. *See Samina*, 968 F.3d at 1116. Indeed, the entire controversy is centered around Board meetings such that communications related to how those meetings ought to be conducted appears to be a quintessential example of legal advice. Additionally, there is no indication that these were non-legal communications. *See Sanmina.*, 968 F.3d at 1116 n.1 (citing cases explaining that attorney-client communications are not privileged where the attorney is merely offering business, ministerial, or clerical services).

Plaintiff argues he is otherwise entitled to the foregoing communications because he "was on the board and, therefore, within the privilege." (Doc. 101 at 8.) However, it appears that the Board agreed to remove Plaintiff on April 15, 2024; Plaintiff acknowledges as much in his First Amended Complaint and in his Response. (Doc. 17 at 5; Doc. 101 at 3.) Accordingly, only the April 9 communication occurred while Plaintiff was on the Board. The issue thus becomes whether VLA can assert attorney-client privilege against a former Board member for legal advice offered during his tenure.

The Court is not convinced that Plaintiff can waive the attorney-client privilege on VLA's behalf in this context.[6] It is well established that attorney-client privilege attaches

---

at 2.) On April 24, Plaintiff sent a letter to VLA, claiming that it was engaging in "discrimination in violation of the Fair Housing Act." (Doc. 101 at 4.) Plaintiff does not appear to contend that this communication is not covered by attorney-client privilege.

[6] Plaintiff cites to cases such as *Gottlieb v. Wiles*, 143 F.R.D. 241, 247 (D. Colo.1992) which found that former directors can access privileged documents created while they were employed by the organization. However, many courts have expressly rejected *Gottlieb*.

- 6 -

to organizational clients. *See Upjohn Co. v. United States*, 449 U.S. 383, 389–90 (1981) Of course, the "administration of the attorney-client privilege in the case of corporations . . . presents special problems." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). However, the Supreme Court has noted that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* at 349*; see Creative Tent Int'l Inc. v. Kramer*, No. CV-15-8005-PCT-SMM, 2015 WL 4638320, at *2 (D. Ariz. Aug. 4, 2015) (finding that a corporation's former CEO "did not have the authority to waive the attorney-client privilege as to [privileged] communications" that took place during the CEO's tenure). Additionally, "[d]isplaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Weintraub*, 471 U.S. at 349. Accordingly, Plaintiff's tenure as a Board member does not allow him to retroactively waive privilege. Thus, the Court grants VLA's motion insofar as Plaintiff seeks communications related to Board meetings.

### C. Implied Waiver

Nonetheless, attorney-client privilege can be waived by implication. *See Sanmina*, 968 F.3d at 1116–17. Implied waiver occurs where "a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." *Id.* at 1117 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003)). Implied waiver is motivated by fairness. *See id.* "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.* (quoting *Bittaker*, 331 F.3d at 719).

In determining whether attorney-client privilege has been implicitly waived, a court considers whether: (1) "the party is asserting the 'privilege as the result of some affirmative act,'"; (2) "through this affirmative act, the asserting party puts the privileged information

---

*See e.g.*, *Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1184–87 (D. Nev. 2008) (reviewing cases).

- 7 -

at issue."; and (3) "allowing the privilege would deny the opposing party access to information vital to its defense." *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)). The Court finds that the privileged communications have not been waived pursuant to this standard.

Plaintiff argues that Swart waived, by implication, any privilege covering communications relating to VLA's decision to hold Zoom meetings. (Doc. 103 at 13.) Plaintiff contends that Swart waived the privilege when he admitted, in response to a request for admission, that he intends to assert an advice of counsel defense in this lawsuit. (*Id.*) Accordingly, Plaintiff argues that a "party waives the attorney-client privilege when it affirmatively places attorney advice at issue in the litigation." (*Id.*)

Based on the briefing, it appears that Swart is no longer on the Board, (Doc. 102 at 5), which again raises the issue of whether a former board member can waive privilege on behalf of an organizational client. The Court sees no reason to find that Swart, as a former Board member, can waive VLA's privilege. *See Weintraub*, 471 U.S. at 349 ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well."). However, Plaintiff's argument is unavailing even assuming that Swart can waive VLA's privilege.

First, Plaintiff argues that Swart "necessarily puts the attorney-client communications concerning the decision to move the meetings to Zoom, and thereafter deny Trauscht's request for accommodation, at issue." (Doc. 101 at 14.) However, Swart merely admitted that he intended to use an advice of counsel defense. Plaintiff has not directed the Court to any additional information indicating that Swart was specifically referring to communications concerning either the decision to move the meetings to Zoom or Plaintiff's request for accommodation. The court acknowledges that a party can waive attorney-client privilege by raising "a claim which in fairness requires disclosure of the protected communication." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). However, it is unclear what communications Swart put into issue, if any. In other

words, it is unclear where the asserted privilege is being used as a "sword" against Plaintiff. *See Sanmina*, 968 F.2d at 1117.

Furthermore, Plaintiff otherwise fails to demonstrate that these communications are vital to his claims. "Privileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Amlani*, 169 F.3d at 1195 (citation modified). "When the sought-after evidence is 'only "one of several forms of indirect evidence" about an issue,' the privilege has not been waived." *Id.* (quoting *In re Geothermal Res. Int'l, Inc.*), 93 F.3d 648, 653 (9th Cir.1996)). As noted, Plaintiffs claims are centered around the Board's decision to hold meetings over Zoom. Thus, communications between VLA and Travis Law about that decision are related to that issue. However, Plaintiff has failed to demonstrate that he would be unable to prove discrimination or retaliation under either the Federal or Arizona Fair Housing Acts without access to those communications.

IV.  **CONCLUSSION**

Accordingly,

**IT IS HEREBY ORDERED granting** VLA's Motion to Quash (Doc. 96).

Dated this 2nd day of October, 2025.

Honorable Susan M. Brnovich
United States District Judge

- 9 -